## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA ST. PIERRE and LYNN GUILLOTTE,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CVS PHARMACY, INC., MASSACHUSETTS CVS PHARMACY, L.L.C., MASSACHUSETTS CVS PHARMACY, INC., and CVS CAREMARK CORPORATION,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　C.A. No. 4:13-cv-13202-TSH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' TRIAL BRIEF

Defendants CVS Pharmacy, Inc., Massachusetts CVS Pharmacy, L.L.C., Massachusetts CVS Pharmacy, Inc., and CVS Caremark Corporation ("CVS" or "Defendants"), by and through their undersigned counsel, pursuant to the Court's September 2, 2016 Procedural Order Re: Final Pretrial Conference/Trial, submit the following Trial Brief.

## I.　　SCOPE OF THE TRIAL

Plaintiffs' motion for class certification was denied in an Order dated February 16, 2016. Accordingly, the trial will address only the claims of the two Plaintiffs named in the caption of the Amended Complaint. CVS will move to exclude any evidence that is unrelated to the claims of these two individuals.

Moreover, the training sessions for which Plaintiffs claim they were not paid consist solely of training modules completed outside the store through CVS's web-based LEARNet training interface. Accordingly, these will be the only training courses or modules at issue in the trial.

II.   **DEFENDANTS' PRETRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

A.   **FINDINGS OF FACT**

1.   Plaintiffs Barbara St. Pierre and Lynn Guillotte filed this lawsuit in Worcester Superior Court on November 4, 2013, seeking to recover unspecified damages relating to alleged non-payment for time worked, pursuant to M.G.L. ch. 149 and 151.[1] Defendants subsequently removed the action to this Court.

2.   CVS Pharmacy, Inc. operates a CVS-branded store located at 197 Boston Turnpike, Shrewsbury, MA 01545, which sells sell prescription drugs and other assorted merchandise.

3.   Plaintiff Barbara St. Pierre was employed by CVS Pharmacy, Inc. as a Pharmacy Technician ("PT") at the Shrewsbury CVS store from March 18, 2011 to July 2015. Plaintiff Lynn Guillotte was employed by CVS Pharmacy, Inc. as a PT at the Shrewsbury CVS store from approximately 1996 to May 2013.

4.   Throughout the relevant time period and to the present, CVS policies provide that: (1) hourly employees are to accurately record hours worked each day, and report all time worked; (2) hourly employees are prohibited from working off-the-clock; (3) it is a violation of CVS policy for anyone to instruct or encourage hourly employees to work off-the-clock; (4) if ordered to work off the clock, employees should report it to an HR manager or the company ethics hotline; (5) working off the clock, or requiring a subordinate to do so, is subject to discipline including termination; (6) employees should review each paycheck and paystub when received to make sure it is accurate, and sign their time card if it was accurate; (7) employees are to report any errors to his/her supervisor, human resources manager, or the employee support line so that CVS could

---

[1] Plaintiffs also alleged that CVS breached an express or implied contract to pay Plaintiffs an hourly wage for each hour worked, but have apparently abandoned this claim as it was not addressed by Plaintiffs in the Joint Pretrial Memorandum.

promptly make any corrections; and (8) mandatory training is considered work that should be paid, even if completing training during normal work hours is not possible.

5.      These policies were followed at the Shrewsbury CVS, and Plaintiffs were aware of these policies. Moreover, Plaintiff St. Pierre does not dispute that she was paid for all training modules, LEARNet or otherwise, during her initial training period, which lasted from March through June 2011.

6.      There are at least three types of training required of PTs:  (1) classroom; (2) on-the-job; and (3) web-based training through CVS's LEARNet training interface. The only type of training at issue in this case is web-based LEARNet training.

7.      Plaintiffs were encouraged to conduct LEARNet trainings in the store, while clocked in. The Plaintiffs often completed their LEARNet training modules in the store while clocked in, and were paid for any LEARNet training modules completed inside a CVS store.

8.      Plaintiffs also had the option of accessing LEARNet training through any computer with Internet access, at home or elsewhere. In that case, Plaintiffs were instructed to inform their Store Manager, Pharmacy Manager, or Lead Technician of the time they spent on any mandatory training outside the store, so that they would be paid for their training time. Plaintiffs, at times, accessed the LEARNet training interface from outside the store.

9.      The only training modules potentially at issue in this case are LEARNet training modules completed remotely, outside of a CVS facility.

10.     To the extent that Plaintiffs completed LEARNet training modules outside of the store, and outside of their normal work hours, they did not report this time to CVS.

11.     CVS managers receive periodic reports through a system called Workload Manager that inform them when a PT has not completed a required training module. When this happens, the

manager communicates to the PT that the training needs to be completed, and informs him or her of the deadline for completion of the training. CVS managers also have the ability to access a list of training modules each PT has completed. However, managers do not receive reports that inform them: (1) where the training was completed: (2) the time it was completed; or (3) how long it took the PT to complete the training. Managers also do not have access to data showing the dates or times that PTs logged in to the LEARNet system. Managers rely on the PTs to self-report any time spent training outside the store.

12.     Each LEARNnet training module has an estimated time of completion. In the first instance, this estimated time is assigned by the instructional designer who created the course.  That initial estimate is based on an industry standard provided by the American Society for Training and Development regarding how long it takes to read a certain number of words. Subsequently, but before the course is released to employees, CVS's training team's tester, who has no knowledge of the material, reads through each page of the module, pauses on each page to comprehend what she's read, clicks on any external links within the module and reads the required materials, completes the assessment if any, and keeps track with a stopwatch of how long it took to complete the module.

13.     This testing is performed in a lab which has an Internet connection speed of 256 kilobytes per second; approximately ¼ to ½ as fast as that in CVS stores, and slower than most home Internet connections. This is intentional, as it is CVS's goal to assign each course an estimated time of completion that is reasonable and generous.

14.     If the tester's actual time to complete the module is noticeably longer than the original estimated time (i.e., more than five minutes), the time assigned to the module is increased accordingly before the module is released for use by employees. The estimated course time is

***never decreased*** after review by the tester.

15.     When logged into LEARNet, in addition to mandatory training, an employee could also be doing other things, such as looking at an optional professional development course in the Skillsoft library, including courses on listening, project management, PowerPoint, spreadsheet programs, and Microsoft Word. They could also take optional continuing education courses required for their licensing, but which they are not required to take through CVS.

16.     Plaintiff St. Pierre's hourly rate of pay was $12.00 per hour from her date of hire through August 6, 2011; $12.24 per hour from August 7, 2011 through March 17, 2012, $12.48 per hour from March 18, 2012 through May 25, 2013, and $12.73 per hour from May 26, 2013 through her last day of employment with CVS.

17.     Plaintiff Guillotte's hourly rate of pay was $16.35 per hour from March 4, 2007 to March 8, 2008. It was $17.10 per hour from March 9, 2008 to February 28, 2009; $17.44 per hour from March 1, 2009 to March 6, 2010; $18.00 per hour from March 7, 2010 until April 30, 2011, and $18.45 per hour from July 15, 2011 through her last day of employment with CVS.

18.     Plaintiffs were paid for all of the time they spent in mandatory training, either in the store, at home, or another location.

19.     Plaintiffs do not have any unpaid wages in connection with their employment with CVS.

20.     To the extent Plaintiffs spent time in training at home or another location, CVS had no reason to know that they were doing so.

## B. <u>CONCLUSIONS OF LAW</u>

1.      In Count I, Plaintiffs allege violations of M.G.L. c. 149, §§ 148.[2] In Count II, Plaintiffs allege minimum wage violations under M.G.L. c. 151, § 10.[3]

2.      Liability under Counts I-II will apply only if Plaintiffs prove that: (1) Plaintiffs performed work for which they were not paid; ***and*** (2) CVS had actual or constructive notice of this work. <u>Vitali v. Reit Management & Research, LLC</u>, 88 Mass. App. Ct. 99, 103-4 and n.6 (Mass. App. Ct. 2015) (rejecting arguments that: (1) an employer should be liable regardless of whether it knew or should have known of the off the clock work; or, in the alternative; (2) that the employer bears the burden of proof regarding its lack of knowledge).

3.      If an employee is unable to marshal proof that the employer knew or should have known of off-the-clock work, the employee cannot prevail. <u>Id.</u> at 104 (citing <u>Prime Communications, Inc. v. Sylvester</u>, 34 Mass. App. Ct. 708, 711 (Mass. App. Ct. 1993), quoting from <u>Forrester v. Roth's I.G.A. Foodliner, Inc.</u>, 646 F.2d 413, 414 (9th Cir. 1981) (no FLSA liability "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work")).

4.      The notice inquiry requires an assessment of all relevant circumstances, including whether the employee failed to use prescribed timekeeping procedures.  <u>Vitali</u>, 88 Mass. App. Ct. at 104. In the context of work done off-site, there is a "premium" on "employee compliance with whatever reporting systems are in place" because a supervisor has little basis for knowing how

---

[2] The limitations period for Plaintiffs' claims pursuant to M.G.L. ch. 149 is three years; therefore the potential liability period for this claim began on November 4, 2010, three years prior to the filing of the initial Complaint.
[3] The limitations period applicable to this case for Plaintiffs' claims pursuant to M.G.L. ch. 151 is two years; therefore the potential liability period for this claim began on November 4, 2011. Plaintiffs do not allege unpaid overtime pursuant to c. 151.

many hours an employee has worked except to the extent the employee reports them. Id., at 106 n. 11.

5.      Employers are not required to routinely review internal electronic data to determine whether employees are working off the clock remotely. Accordingly, the presence of data showing a remote login to CVS's LEARNet interface is insufficient, standing alone, to establish actual or constructive notice that compensable work was performed. See Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 965 (5th Cir. 2016) (computer usage reports were insufficient by themselves to put an employer on constructive notice that an employee was working off the clock); Green v. Federal Express Corporation, 614 Fed. Appx. 905, 908 (9th Cir. 2015) (electronic records reflecting scans of packages were not sufficient to put employer on constructive notice of off-the-clock work); Hertz v. Woodbury County, 566 F.3d 775, 781-82, 84 (8th Cir. 2009) (employer was not required to review its electronic data for payroll purposes to determine whether employees were remotely working off the clock).

6.      Accordingly, CVS could only be liable to Plaintiffs for any time spent completing LEARNet training sessions which Plaintiffs reported to their managers.

7.      Because Plaintiffs did not report their time spent in LEARNet training outside the store to their managers, and CVS did not otherwise have actual or constructive knowledge of that time worked, CVS is not liable to Plaintiffs for any allegedly unpaid training time.

8.      Assuming, *arguendo*, that Plaintiffs are owed damages, the amount of such damages is not greater than that offered to Plaintiffs in the Fed. R. Civ. P. 68 Offers of Judgment served on Plaintiffs on May 22, 2014. Accordingly, Plaintiffs are liable to CVS for its costs incurred after the offers were made, and Plaintiffs are not permitted to recover their attorneys' fees

incurred in this matter on or after the date of the offer. *See* Fed. R. Civ. P. 68; <u>King v. Rivas</u>, 555 F.3d 14, 20 (1st Cir. 2009).

9.      To date, Plaintiffs have refused to provide a calculation of their alleged damages. In their responses to Interrogatories, Plaintiffs objected based on attorney-client and work-product privileges, overbreadth and undue burden, and provided only their hourly wage rates, claiming that CVS is in possession of the necessary records. However, CVS provided any relevant documents to Plaintiffs nearly a year earlier. In their depositions, Plaintiffs again objected based on privilege and were unable or unwilling to provide a calculation of their damages. Accordingly, Plaintiffs are precluded at trial from introducing evidence of their alleged damages.

Respectfully submitted,

CVS PHARMACY, INC.,
MASSACHUSETTS CVS PHARMACY,
L.L.C., MASSACHUSETTS CVS
PHARMACY, INC., and CVS
CAREMARK CORPORATION,

By their attorneys,

/s/ Douglas J. Hoffman
Jeffrey S. Brody (BBO# 556032)
Douglas J. Hoffman (BBO# 640472)
Matthew A. Porter (BBO# 630625)
Jonathan Shank (BBO# 672414)
JACKSON LEWIS P.C.
75 Park Plaza
Boston, MA 02116
(617) 367-0025; FAX: (617) 367-2155
brodyj@jacksonlewis.com
hoffmand@jacksonlewis.com
porterm@jacksonlewis.com
jonathan.shank@jacksonlewis.com

Dated: October 13, 2016

## <u>CERTIFICATE OF SERVICE</u>

   This hereby certifies that on this 13th day of October 2016, a true and accurate copy of the above document was filed with the Court via the ECF system, and served upon the attorneys listed below, via email and first-class mail, postage prepaid.

  Philip J. Gordon
  Kristen M. Hurley
  GORDON LAW GROUP LLP
  585 Boylston Street
  Boston, Massachusetts 02116
  (617) 536-1800

          /s/ Douglas J. Hoffman    
          Jackson Lewis LLP

4818-9163-7818, v. 3